Spring Term
1839.

CHANCERY.          Derrington &c. *against* Goodman.

[Messrs. Crittenden and Cates for plaintiffs: Mr. Owsley for defendant.]

FROM THE CIRCUIT COURT FOR CALLOWAY COUNTY.

*June* 7.          Judge MARSHALL delivered the Opinion of the Court.

The several successive acts for the protection of the settlers west of the Ten. river, secured to each settler (for a limited time) a preemptive right to the land on which he had an improvement, although his dwelling was not on the same quarter section; but, by the act of 1835, the privilege was restricted to one qr. sec. besides that on which the settler resided. But he may have the right to the qr. sec. on which he resides and to one other; and, as the statute does not discriminate between these two rights, the courts must consider them as of the same quality and dignity. And so, if a settler residing on one qr. sec. has an improvement extending into another, he has the same preemptive right to the latter that he has to the former, and the same that another settler residing upon it has. A party, at the instance, and for the benefit, of a settler west of the Ten. river, advanced the State

THIS case arises under the acts of Assembly for the protection of the actual settlers in the land west of the Tennessee river, and more immediately under the second section of the act of February 20th, 1835, 'to reduce the price of the public lands west of the Tennessee river and for other purposes.' *Sess. Acts*, 1834–5, *p.* 182. This act, though slightly variant in its terms from those which preceded it, in requiring that the person claiming the benefit of it should reside on one of the two quarter sections of land to which the preemptive right is limited, is in other respects substantially the same as the previous acts on the same subject, passed at each of the four preceding sessions. Those acts received a construction in the case of *Johnson* vs. *Gresham*, 5 *Dana*, 542, to which we still adhere, and in accordance with which this case will be decided.

The bill is filed by Goodman, who alleges that in violation of the statute and of his preemptive right to the N. W. quarter of section 15, township 5, range 3, east, founded on his actual residence, within said quarter, on an improvement owned by him, at and before and ever since the said 20th of February, 1835, one Hancock, on the 17th of March, 1835, entered the same quarter with the Receiver of public money, paid the State price of twenty dollars therefor, and received the certificate, which he afterwards assigned to Derrington, to whom a patent had issued; that afterwards, and within nine months from the said 20th of February, 1835, the complainant, intending to avail himself of his preemptive privilege, attempted to enter the same quarter, and tendered the State price to the Receiver; but that the same was refused, and his attempt defeated, in consequence

of the previous entry by Hancock; and he tenders the same money in Court, for the benefit of Derrington, and prays a relinquishment of his title.

These facts, on which the preemptive right is claimed, are all established by the proof, and if there were no other facts affecting his right in equity, there would be no doubt, upon the authority of the case of *Johnson* vs. *Gresham,* above cited, and that of *Harrison* vs. *Woodruff,* 6 *Dana,* 188, and *Bohannan* vs. *Pace &c. same,* 194, that the complainant is entitled to the relief prayed for.

But the complainant's claim to the relief sought by him, is opposed, on the ground that Derrington, who has obtained a patent, and for whose benefit the entry was made, by and in the name of Hancock, was himself entitled to the preemptive privilege in the same quarter section, by virtue of being resident on an improvement within it, on the 20th of February, 1835, and before and up to the present time. And these facts on which Derrington's claim is founded, are also proved, with the additional explanatory fact, that his house is situated on an adjoining quarter section, but that his improvement attached to his residence extends into this and other adjacent quarter sections—the common corner of the four being in his field. It appears also, that Derrington purchased and moved to his improvement a short time before Goodman bought and settled on his, and that Derrington's was also made first.

In the case of *Johnson* vs. *Gresham,* it was decided that, the protection of the statutes, and the preemptive right given to the settler, extended to his improvement on which he was settled, although that improvement was not confined to the quarter section on which his dwelling house was situated. And the statute of 1835 must receive the same construction, with the limitation that the protection and privilege are only extended to one quarter besides that on which the settler resides. And as the statute makes no distinction as to the quality or dignity of the preemptive right to the two sections thus secured to the settler, whose house may be situated within the lands of two sections, the other to two only, the right of the latter to the tract claimed by both, should be preferred.

price for a qr. sec. of land to which the settler had a preemption, under the act of 20 Feb. '35; and (for security) took the certificate in his own name; but afterwards, upon being reimbursed, assigned it to the settler, who obtained the patent: the settler's rights, in equity, are the same as tho' the certificate had issued to him.

If one obtains the title to land (west of the Ten.) to which another has a preemption, the latter may, by bill in ch. compel a surrender of the title to him, on equitable terms: and if two have each preemptive rights to the same land—their equities being equal —that which is first asserted by suit obtains the preference; and a right that may be enforced in ch., may be as effectually secured by arrangement between the parties.

Where equities are equal, the legal title must prevail.

Where the law gives to each of two settlers a preemption to two tracts of land, & there is a tract to which they have both acquired the right—if one of them has acquired rights to more than two, and the other to two only, the right of the latter to the tract claimed by both, should be preferred.

in one, while his improvement on which he resides may extend over into another, we cannot make a distinction between them.   It seems to us, therefore, that Derrington's settlement and improvement gave him the same preemptive right, and therefore, the same equity to the quarter section now in dispute, as to that on which his dwelling was situated; and, consequently, the same preemptive right and equity to the quarter in dispute, as Goodman's residence and improvement within it gave to him.

If then the entry on which Derrington's patent has issued, had been made by him in his own name, there could be no doubt that, having the same right under the law, to make the entry, which Goodman had, and having in fact made it, and obtained the legal title, his title could not be affected by an equity which was originally no better than his.   And the only remaining question on the facts now stated, is whether Derrington's legal title can, under the circumstances, be connected with and supported by his equity.   That it can be, we think is evident from the following consideration.

1. Within a month after the passage of the act conferring the preemptive right, Derrington evinced the determination to avail himself of that right, and for that purpose and to protect his improvement, prevailed on Hancock to advance the State price for him; and to secure Hancock in the repayment of the advance, he was permitted to enter the quarter in his own name, he giving his bond to transfer the certificate to Derrington, on being paid, which he did do.   And Derrington, by and for whom this was done, having obtained the legal title, there seems to be no ground for disconnecting it from his original equity, to secure and strengthen which all these acts were done.

2. But if Hancock had made the entry and obtained the certificate as a stranger, and with the view of appropriating the land to himself, either Goodman or Derrington might, on the authority of the cases above cited, and particularly of *Harrison* vs. *Woodruff*, have filed his bill, and on tendering the State price, have compelled Hancock to transfer the certificate to him, or to relin-

quish his title if he had obtained a patent, whichsoever of them had first resorted to this remedy, would undoubtedly have obtained the relief sought, and the other could not afterwards have successfully asserted against him, an equity which was never better than his. It seems to us that what could have been thus done by resorting to Chancery, might be done, on the same terms and with the same effect, by private arrangement between the parties.

We deem it unnecessary to enquire whether the priority of Derrington's improvement, and of his settlement upon it, should be considered as adding to the merits of his case; it is sufficient that his equity was equal to that of Goodman, and that he has cloathed it with the legal title. In such a case, the legal title must prevail.

The equity of each party is impeached by the other, on the ground, that the settlement and improvement of each has been made available under the act of February, 1835, to protect and secure two other quarter sections, besides the one now in dispute; which if true as to either, would deprive that one of the preemptive privilege in relation to this quarter; and if true as to both, would, in destroying the complainant's equity, leave the legal title to prevail. But although the evidence on this subject is, in our opinion, rather more definite against the complainant, than against the defendant, it is too vague in relation to each, to constitute a distinct ground of decision.

But upon the ground before stated, we are of opinion that the Court erred in granting the relief prayed for in the bill. Wherefore, the decree is reversed, and the cause remanded, with instructions to dismiss the bill.